

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Hon. L. S. Johnson, Commissioner
State Department of Banking
Austin, Texas

Dear Sir:

Opinion No. O-7485

Re: Whether the issuance of
the certificates under
consideration by the
Gibraltar Life Under-
writers, Inc., is subject
to the restrictions con-
tained in Article 1524a,
V.A.C.S., and related
questions.

Your letter of recent date requesting an opinion from this
department on the above subject matter is as follows:

"I am in receipt of an application from The
Gibraltar Life Underwriters, Incorporated, a Texas
corporation organized under Article 1303b of the
Revised Civil Statutes, for permission to issue and
sell so-called 'Cooperative Board Certificates' of a
type shown by the copy attached hereto. This appli-
cation was submitted and the approval of this Depart-
ment is requested under the terms and provisions of
Article 1524a of the Revised Civil Statutes, as
amended.

"You will notice that the Certificates differ from
the ordinary investment certificate in that they have
no cash surrender value and bear no definitely ascer-
tainable rate of interest. Rather, the Certificates
in question provide for the delivery upon maturity of
twenty shares of the capital stock of The Gibraltar
Life Insurance Company of America, together with any
accrued dividends upon such stock, and for periodic
payments to purchasers of a 'bonus' of varying per-
centages, with the amount of such bonus being dependent

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. L. B. Johnson - Page 2

upon the amount of the net premium income of the Life
Insurance Company. In addition, the Certificates bear
a further provision in which they will mature immediately
upon the death of the owner and in which payments upon
a Certificate will be waived in the event of the disa-
bility of the purchaser.

"In opinion No. O-2408, written by Honorable Ardell
Williams, Attorney General Mann considered a proposed plan
of operation which bears considerable similarity to the
one under discussion. You will notice from this Opinion
that the Company there involved also proposed to issue and
sell certificates which were payable in stock rather than
in cash upon maturity and which carried 'bonus' provisions
similar to those in the attached Certificates. Apparently
the provisions relative to the death or disability of the
owner which are contained in the Gibraltar Certificate were
not contained in the certificate which was discussed in
Opinion No. O-2408, and in addition, you will notice that
the proposed Certificates of The Gibraltar Life Under-
writers, Incorporated, provide for the payment upon maturity
of shares of stock in another corporation, to-wit, the Gib-
ralter Life Insurance Company of America, whereas the cer-
tificates considered in Opinion No. O-2408 were payable
in shares of stock in the same Company which proposed to
issue the certificates.

"In Opinion No. O-2408 the writer makes certain state-
ments to the effect that Article 1524a was designed to
comprehend certificates which create a debtor-creditor
relationship between the issuing company and the purchaser
of the certificates, that certificates of the type there-
under discussion are not 'certificates or other obligations'
within the meaning of Article 1524a, and that Article 1524a
was not designed to cover a plan for making installment
sales of stock. From these premises, the writer of the
Opinion concluded that a plan of operation of the type there
considered is 'not within the purview' of Article 1524a.

"I am somewhat in doubt as to the exact meaning of
this opinion and as to its applicability to the instant
situation. Specifically, the questions which perturb me
are as follows:

"(a) Is the conclusion in Opinion No. O-2408 that the
certificates there discussed are 'not within the purview'

of Article 1524a to be construed as meaning that certificates of such type are not subject to the limitations and restrictions contained in this Article and need not be approved by the Banking Commissioner? If this be true, it would appear to follow that such certificates could be issued by a corporation under its general charter powers, subject to possible restrictions by the Texas Securities Act, and that the somewhat paradoxical situation would result in which the financial affairs of a corporation organized under Article 1303b or under Subdivisions 48, 49 or 50 of Article 1302 would be subject to examination by this Department under Section 2 of Article 1524a and to the publication of reports of financial condition under the supervision of this Department by virtue of Section 4, but in which the principal activity of such corporation, to-wit, the issuing of certificates of the type under discussion, could in no way be controlled by this Department under the remaining Sections of Article 1524a.

"(b) If the preceding question is answered in the affirmative, it would appear to follow that certificates of this kind under discussion need not be secured by a statutory deposit under Section 7 of Article 1524a, or, alternatively, by a trust agreement under such statute. In such an event, would the issuing company be either required or permitted to make the statutory deposit provided by Article 696?

"(c) If question (a) above is answered in the negative, does such answer mean that certificates of the kind under discussion may not be issued and sold under the provisions of Article 1524a, and, since this Article is the only one which provides for the issuance of installment type certificates by an organization such as that in question, that no authority exists for the issuance and sale of such certificates in this State?

"(d) Finally, in answering the above inquiries and in interpreting Opinion No. O-2406, would your answers and your interpretation be affected by the fact that the proposed certificates of the Gibraltar Company are payable in stock of another corporation and that such certificates have the insurance aspect which provides for the death or disability of the purchaser, whereas the certificates considered in Opinion No. O-2406 were payable in stock of the issuing Company and apparently contained no similar provisions relative to the death or disability of a purchaser?"

Hon. L. S. Johnson - Page 4

The issuance and sale of the "Cooperative Bond Certificates" by the Gibralter Life Underwriters, Incorporated, in effect amounts to the sale of stock on an installment plan.

Article 1303b provides:

"A private corporation may be formed for any one or more of the following purposes, without banking or insurance privileges: to accumulate and loan money; to sell and deal in notes, bonds and securities; to act as Trustee under any lawful express trust committed to it by contract or will, or under appointment of any court having jurisdiction of the subject matter, and as agent for the performance of any lawful act; to subscribe for, purchase, invest in, hold, own, assign, pledge and otherwise deal in and dispose of shares of capital stocks, bonds, mortgages, debentures, notes and other securities or obligations, contracts and evidences of indebtedness of foreign or domestic corporations not competing with each other in the same line of business; to borrow money or issue debentures for carrying out any or all purposes above enumerated. Provided that the power and authority herein conferred shall in no way affect any of the provisions of the anti-trust laws of this state."

The Gibralter Life Underwriters, Incorporated, clearly has the power under Article 1303b to issue and sell the certificates under consideration unless Article 1524a restricts or prohibits the sale of same. Article 1524a is a regulatory statute restricting and regulating certain activities of corporations organized under Subdivisions 48, 49 or 50 of Article 1302, R.C.S., and Article 1303b, R.C.S.

Sections 1, 7 and 12 of Article 1524a read as follows:

"Sec. 1. This Act shall embrace corporations heretofore created and hereafter created having for their purpose or purposes any or all of the powers now authorized in Subdivisions 48, 49 or 50 of Article 1302, Revised Civil Statutes of Texas, 1925, and heretofore or hereafter created having in whole or in part any purpose or purposes now authorized in Chapter 275, Senate Bill Number 232 of the General and Special Laws of the Regular Session of the 40th Legislature. No

such corporation shall act as agent or trustee in the
consolidation of or for the purpose of combining the
assets, business or means of other persons, firms,
associations or corporations, nor shall such corpor-
ation as agent or trustee carry on the business of
another. No such corporation shall offer for sale or
sell its bonds, notes, certificates, debentures or
other obligations unless it shall have an actual paid
in capital of not less than Ten Thousand ($10,000.00)
Dollars."

"Sec. 7. All bonds, notes, certificates, debentures,
or other obligations sold in Texas by any corporation
affected by a provision of this Act shall be secured by
securities of the reasonable market value, equaling at
least at all times the face value of such bonds, notes,
certificates, debentures or other obligations. If such
corporation sells in Texas, bonds, notes, certificates,
debentures, or other obligations upon which it receives
installment payments, such bonds, notes, certificates,
debentures and other obligations shall be secured at all
times by securities having the reasonable market value
equal to the withdrawal or cancellation value of such
obligations outstanding. Said securities shall be
placed in the hands of a corporation having trust powers
approved by the Banking Commissioner of Texas as Trustee
under a trust agreement, the terms of which shall be
approved in writing by the Banking Commissioner of Texas,
or at the option of any such corporation which sells in
Texas, bonds, notes, certificates, debentures, or other
obligations upon which it receives installment payments,
such corporation may upon application to, and approval
by, the Banking Commissioner of Texas deposit securities
having a reasonable market value equal to the withdrawal
or cancellation value of such obligations outstanding with
the State Treasurer of Texas in lieu of such deposits with
a Trustee as set forth hereinabove, provided that, in the
event such deposit is made with the State Treasurer of
Texas in lieu of such Trustee: (1) Such corporation
shall file a certified statement of reserve liability and
detailed list of securities so deposited, semi-annually
with the Banking Commissioner of Texas, which certification
shall be made by a Certified Public Accountant, who shall
be approved by and be satisfactory to the Banking Commis-
sioner. The corporation shall pay a fee of Fifteen

Hon. L. S. Johnson - Page 6

Dollars ($15) for filing each such statement. (2) Said securities shall be deposited with the State Treasurer under a trust agreement, the terms of which shall be approved by the Banking Commissioner.

"It is further provided that if any corporation, transacting business under this Act, shall have heretofore deposited securities with a corporation having trust powers under a trust agreement as provided hereinabove desires to avail itself of the option to deposit securities with the State Treasurer of Texas in lieu of such Trustee, it shall first secure a written certificate from the Banking Commissioner of Texas approving said securities on deposit with the Trustee as being eligible and sufficient for deposit with the State Treasurer, and it shall file a copy of said certificate with the State Treasurer of Texas, and with the said Trustee whereupon said Trustee shall deliver said securities so approved to the State Treasurer of Texas together with the trust agreement and/or agreements relating thereto, who shall issue his receipt therefor to said Trustee, furnishing a copy thereof to the corporation owning the same, which said receipt of the State Treasurer of Texas shall fully and finally relieve, acquit, and discharge the said Trustee of all responsibility and liability under such trust agreement, and/or agreements, whereupon said State Treasurer shall be considered as, and be substituted as, Trustee instead and in the place of the original Trustee.

"In the event that the Banking Commissioner approves part of said securities with the said Trustee as being sufficient and eligible for deposit with the State Treasurer, but does not approve all of said securities with said Trustee, and/or in the event there is a deficiency of securities with said Trustee, the corporation owning said securities and desiring to avail itself of its option of depositing said securities with the State Treasurer, shall deposit with the State Treasurer of Texas a sufficient amount of eligible securities as defined herein securing the approval of the Banking Commissioner of Texas as to said securities so that the amount of securities so deposited together with the amount of securities with said Trustee that are approved by the Banking Commissioner as being eligible and sufficient have the reasonable market value equal to the withdrawal or cancellation value of such obligations then outstanding.

Hon. L. B. Johnson - Page 7

Whereupon the said Trustee shall, as hereinabove set
forth, deliver to the State Treasurer of Texas the secu-
rities in its hands, taking the receipt of the State
Treasurer therefor, and in such case such Trustee shall
be fully and finally relieved, acquitted, and discharged
of all responsibility and liability under such trust
agreement, and/or agreements.

"Any such corporation which sells in Texas, bonds,
notes, certificates, debentures or other obligations upon
which it receives installment payments, which upon the
effective date of this Act has securities deposited with
a Trustee hereunder, may, with the written consent of the
Banking Commissioner continue under said trust agreement, and/
or agreements as to bonds, notes, certificates, debentures
or other obligations already sold in Texas upon which it re-
ceives installment payments, and avail itself of the option
to deposit such securities as to future sales of said obli-
gations with the State Treasurer of Texas by complying with
this Act in the same manner that a corporation hereafter
organized would be required to comply with this Act.

"All trust agreements hereafter made as to any secu-
rities placed with the State Treasurer under this Act shall
provide that such securities may be substituted with secu-
rities of equal value by the filing by the corporation with
the State Treasurer of a certificate of authorization to do
so from the Banking Commissioner of Texas, and that any of
said securities may be withdrawn by the corporation from the
State Treasurer by the filing with the State Treasurer of a
certificate issued by the Banking Commissioner that the with-
drawing of the particular securities is authorized by the
Banking Commissioner, and that its withdrawal will not reduce
the amount of securities below the amount required by this
Act. Provided, that before selling or offering for sale on
the installment plan in Texas any such bonds, notes, certifi-
cates, debentures, or other obligations, such corporation
shall file with the Banking Commissioner specimen copies of
such bonds, notes, certificates, debentures, or other obli-
gations. Unless within sixty (60) days after the filing of
any such specimen copy the Banking Commissioner issues a
notice to such corporation of a hearing to determine whether
such instrument is fraudulent, unreasonable or inequitable
or has an unreasonable or inequitable cash surrender
value, the same shall be deemed to have been

Hon. L. S. Johnson - Page 6

approved by the Banking Commissioner. But if, after hearing pursuant to notice issued within said period of sixty (60) days, the Banking Commissioner should find and determine that any such bond, note, certificate, debenture, or other obligation is either fraudulent, unreasonable, or inequitable, or has an unreasonable or inequitable cash surrender value, such corporation shall have no right to sell or offer for sale in the State of Texas such bond, note, certificate, debenture or other obligation so found to be fraudulent, unreasonable, or inequitable, or has an unreasonable or inequitable cash surrender value. Provided, that any such corporation may have such finding reviewed in the District Court of Travis County, Texas, by filing suit against the Banking Commissioner in such Court at any time within sixty (60) days after receiving notice of such finding. In such suit such corporation shall be entitled to a trial de novo on the issues on which the Banking Commissioner shall have made such adverse findings. If as the result of such trial the issues shall be determined favorably to such corporation, the adverse findings of the Banking Commissioner shall have no further binding force or effect; and in that event, the right to sell such notes, bonds, or other obligations may be protected by injunction issued in said cause. Provided, that either party shall have the right of appeal according to statutes governing appeals in civil cases. Provided further that the requirements contained herein obligating corporations selling notes, bonds, certificates, debentures, or other obligations, whether in single payment or on the installment plan, to secure said issuance and sale by securities of a reasonable market value equal to the face of single payment certificates or to the withdrawal or cancellation value of installment payment certificates, shall not apply to corporations having a minimum capital of Fifty Thousand Dollars ($50,000), where such sales are made to debtors who are at the time indebted to the issuer; conditioned the face amount sold shall not exceed the amount of the then debt of purchaser to issuer; and further conditioned the bonds, notes, certificates, debentures and other obligations sold in Texas provide for maturity of the indebtedness at a date not later than the final maturity date of the indebtedness of purchaser to issuer; and conditioned further that the issuance and sale of such certificates, whether collateralized or not, shall obligate the Banking Commissioner of Texas to make examinations to the same extent as if collateral were required.

"All cash or securities left with the State Treasurer in compliance with Article 696, Revised Civil Statutes of 1925, shall be considered as part of the collateral required under this section.

"All bonds, notes, certificates, debentures, or other obligations, sold or offered for sale in Texas by such corporation shall definitely describe the character of collateral securing the payment of such obligation.

"In the event any such corporation shall sell or offer for sale in Texas, any bonds, notes, certificates, debentures, or other obligations without complying with this section, such conduct shall constitute grounds for the forfeiture of its charter and for receivership at the suit of the Attorney General which suit shall be brought upon the request of the Banking Commissioner of Texas."

"Sec. 12. None of the provisions of this Act, except that portion of Section 4 requiring the filing of financial statements, shall apply to sales made by any corporation affected by this Act, except sales by such corporations of bonds, notes, certificates, debentures or other obligations issued by and that are direct obligations of the corporation selling or offering the same for sale. The words 'bonds', 'notes', 'certificates', 'debentures', and 'other obligations', as used in this Act, shall not be construed to cover or include notes executed by corporations to banks and other financial institutions for money borrowed by such corporations for use in the usual course of its business."

As pointed out in your request, this department in Opinion No. O-2408 considered a proposed plan of operation very similar to the one now under discussion. We quote from said opinion as follows:

"Apparently, Articles 1524a to 1524k, inclusive, were designed to regulate the sales of bonds, notes, certificates, debentures or other obligations of corporations which create the relation of debtor and creditor between the corporation issuing the same and the holder of the certificates, etc., and the facilities provided for under the above mentioned articles are not designed for the purpose of enabling the corporation to sell its stock on an installment basis.

"It is our opinion that the proposed transaction of the Southern States Life Underwriters, Inc., does not involve the sale of 'Certificates or other obligations', within the meaning of the above mentioned statutes. Therefore, the proposed plan of stock sales of the Southern States Life Underwriters, Inc., would not come within the purview of Articles 1524a to 1524k, inclusive."

Since the plan now under consideration does not "come within the purview of Article 1524a", in answer to your question (a) it is the opinion of this department that certificates of such types are not subject to the limitations and restrictions contained in Article 1524a and need not be approved by the Banking Commissioner. Therefore, we answer question (a) in the affirmative.

Article 696 provides as follows:

"Each corporation, company or individual, doing business in this State as a bond investment company, or company to place or sell bonds, certificates or debentures on the partial payment or installment plan, shall deposit with the State Treasurer, in cash or securities approved by said Treasurer, the sum of five thousand dollars, and shall deposit semi-annually with said Treasurer, in cash or securities, to be approved by said officer, ten per cent of all net premiums received until the sum deposited amounts to one hundred thousand dollars."

From what we have said in answer to question (a), it is our opinion that it necessarily follows that the sale of the so-called "Cooperative Board Certificates" does not involve the sale of bonds, certificates or debentures as contemplated by Article 696. On the contrary, it amounts to a sale of stock on the installment plan. Therefore, it is our opinion that the issuing company is not required to make the deposits set forth in Article 696.

In view of our answer to question (a), it is unnecessary to answer question (c). We answer question (d) in the negative.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED DEC 5, 1946

ATTORNEY GENERAL OF TEXAS

By J. C. Davis, Jr.
J. C. Davis, Jr.
Assistant

By John Reeves
John Reeves

JR:djm